IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TONYA L. DICKERSON, ) | |
| ) | |
| Plaintiff, ) | No. 2:21-cv-02170-DCN-MGB |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| NHC HEALTHCARE-CHARLESTON, ) | |
| LLC, and NATIONAL HEALTHCARE ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 49, that the court grant defendants NHC Healthcare-Charleston, LLC and National HealthCare Corporation's (together, "NHC") motion for summary judgment, ECF No. 38. For the reasons set forth below, the court adopts the R&R in full.

## I.  BACKGROUND

The R&R ably recites the facts as stated in the complaint, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.[1]

Plaintiff Tonya L. Dickerson ("Dickerson"), an African American woman, began working as a social worker at Trinity Mission in January 2005 and continued her

---

[1] The court dispenses with citations throughout its recitation of the facts. Where applicable, the court draws its facts from the complaint, ECF No. 1, and the R&R, ECF No. 49.

1

employment there when NHC assumed ownership in August 2008. In her role with NHC, Dickerson was responsible for handling all admissions assignments.

In early 2017, Jaclyn McClain ("McClain") was hired to replace Dickerson's supervisor as Director of Social Services. Dickerson contends that she should have had an opportunity to apply for this position, as she was a qualified candidate. Dickerson claims that she was unable to apply because the position was not publicly posted on the bulletin board at the facility where she works. She asserts that this was a violation of NHC's hiring policy, which states, in relevant part:

> We believe in rewarding good performance by promoting partners from within the organization to fill vacancies that become available. You can learn about promotional opportunities by reviewing the job postings located on the partner bulletin board. The bulletin board is normally located in the partner lounge area (or other easily recognized employer location). If you are interested in promotional opportunities, you should communicate your interest to your department head. After the department head discussion, you and/or your department head may approach the hiring manager who has the position vacancy. To be eligible for promotion, you must meet position requirements, have completed your introductory period and have maintained satisfactory performance and attendance. Both department heads must agree on the timing of your promotion . . . . All applicants who meet the requirements and qualifications for a position will be given fair consideration . . . we reserve the right to recruit and fill available positions from outside sources if [] doing so [is] in the best interest of your employer.

ECF Nos. 38-8 at 2–3; 41-3 at 2–3.[2]

On February 9, 2017, Dickerson sent a letter to NHC's Facility Administrator, Tyler Bartlett ("Bartlett"), and to National HealthCare Corporation noting her concerns and stating that she contested NHC's decision to hire McClain as Director of Social

---

[2] The hiring policy is quoted from NHC's Partner Handbook, which was filed as an exhibit to both NHC's motion for summary judgment, ECF No. 38-8, and Dickerson's response in opposition, ECF No. 41-3. This citation to the record is based on the pagination of the parties' exhibits as they were filed in the court's electronic filing system, not to the pagination of the NHC Partner Handbook itself.

Services. In the letter, Dickerson indicated that she "believed she did not receive the promotion due to her race and age." ECF No. 38-1 at 6. According to Dickerson, Bartlett called her into his office and acknowledged receiving the letter. Dickerson claims that he did not seem happy about receiving the letter though he did not raise his voice. Barbara Johnson, a bookkeeper employed by NHC, was also present during this meeting. Dickerson asserts that several months later—in August 2017—she received a negative performance evaluation from McClain.

In October 2020, McClain resigned from her position to pursue employment elsewhere. Dickerson contends that NHC, again, did not publicly post this vacancy to the bulletin board of the facility where she worked so she again could not apply for the role. Dickerson explained that she was, however, informed that McClain was leaving. More specifically, McClain directly advised Dickerson of her resignation, encouraged Dickerson to apply for the position, and provided a job description for the position. Dickerson claims that she went to speak with Bartlett about the Director of Social Services position immediately following her conversation with McClain. According to Dickerson, Bartlett told her that the job was filled and that the new Director of Social Services would be relocating from another NHC facility. Dickerson also avers that, at some point prior to these conversations, Bartlett told McClain that he would never hire Dickerson as the Director of Social Services.[3] Ultimately, Jennifer McClellan ("McClellan") was hired for the position.

---

[3] NHC contests this fact. See ECF No. 38-5, McClain Decl. ¶ 9 (averring that Dickerson's allegations that Bartlett told McClain he would never promote Dickerson to Director of Social Services "are absolutely false"). However, since NHC moves for summary judgment, the court construes the facts in the light most favorable to the non-moving party and assumes that Bartlett made this statement.

Dickerson asserts that she began experiencing a hostile work environment shortly after NHC hired McClellan. Dickerson contends that McClellan was aggressive towards her and not approachable. Dickerson reported her complaints about McClellan to NHC's grievance hotline. She also asserts that the racially hostile work environment she experienced under McClellan "caused her to seek medical treatment." ECF No. 41 at 4.

On September 19, 2021, Dickerson filed the complaint alleging employment discrimination, hostile work environment, and retaliation in violation of 42 U.S.C. § 1981. ECF No. 1, Compl. All pretrial proceedings in this case were referred to Magistrate Judge Baker pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civ. Rule 73.02(B)(2) (D.S.C.). On August 12, 2021, NHC filed a motion to dismiss. ECF No. 8. On October 4, 2021, this court adopted in full the report and recommendation from Magistrate Judge Baker that NHC's motion to dismiss be granted as to Dickerson's state law claims. ECF No. 17 (adopting ECF No. 12). The order similarly adopted the R&R's recommendation that Dickerson's Section 1981 discrimination, hostile work environment, and retaliation claims proceed in a limited capacity. Id. On November 1, 2022, NHC filed a motion for summary judgment. ECF No. 38. On November 14, 2022, Dickerson responded in opposition, ECF No. 41, to which NHC replied on December 5, 2022, ECF No. 44. On May 4, 2023, Magistrate Judge Baker issued a report and recommendation that NHC's motion for summary judgment be granted in full. ECF No. 49, R&R. On May 18, 2023, Dickerson objected to the R&R. ECF No. 50. On May 31, 2023, NHC replied to the objections, ECF No. 51. As such, the motion has been fully briefed and is ripe for review.

## II. STANDARD

### A. Order on R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id.

However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings. Id.

### B. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III. DISCUSSION

At the outset, the court notes that the October 4, 2021 order significantly limits Dickerson's remaining claims. R&R at 6–7; see generally ECF Nos. 12; 17. As this court specified in that order, it is well-settled that a four-year statute of limitations applies to § 1981 claims. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004). Indeed, the court detailed that Dickerson could not base her discrimination claim on her negative performance review, NHC's failure to evaluate her annually, nor any events

alleged in January 2017.  R&R at 6–7; see generally ECF Nos. 12; 17.  Similarly, any events that occurred prior to July 19, 2017, are outside the applicable statute of limitations and thereby cannot support Dickerson's hostile work environment claim, meaning that Dickerson's allegations about her reduced opportunities for promotion in January 2017 should not be considered in support of the claim.  Id.  Thus, Dickerson can only rely on the alleged retaliatory conduct that occurred in November and December of 2020 to support her claims, which accordingly limits the court's discussion of Dickerson's § 1981 claims.  Id.

  The R&R recommends that the court grant summary judgment to NHC on each of Dickerson's § 1981 claims.  The R&R explains that, based on the statute of limitations, the evidence before the court is solely NHC's failure to publicly post the Director of Social Services position on the bulletin board in November 2020.  R&R at 9–10.  Yet, the failure to post affected all employees equally, meaning there is no evidence before the court that the failure to post a notice on the bulletin board was a means of racial discrimination.  Id.  The evidence before the court indicated that McClain and Bartlett used word-of-mouth to inform the entire social work department that McClain was resigning and Dickerson, herself, avers that McClain told her of the open position personally.  Id.  Moreover, Dickerson cannot establish that she suffered an adverse employment outcome—namely, a reduced opportunity for promotion.  Id.  The record shows that the position was not actually filled until December 2020 and indicates that Dickerson never applied.  Id.  Thus, the magistrate judge concluded that Dickerson did not meet her burden of proof for either the racial discrimination or the retaliation claims.  Id. at 7–15.

Additionally, the R&R recommended the court find that Dickerson has not met her burden of proof for the hostile work environment claim. Id. at 15–17. For the same reasons the racial discrimination and retaliation claims fail, a reasonable jury could not find that Dickerson's denied promotion to Director of Social Services—a position that she never applied for and for which McClellan was more qualified—constituted a hostile work environment. Id. The R&R similarly found the alternative evidence of a hostile environment—namely, that McClellan would publicly berate Dickerson in front of the other employees—did not give rise to a claim even if it were substantiated because Dickerson confirmed that McClellan never made any race related comments or jokes to Dickerson. Id. In fact, the only specific evidence before the court in support of the hostile work environment claim was that McClellan would laugh and talk with other employees but that Dickerson found speaking with McClellan unpleasant for unspecified reasons. Id. As such, the magistrate judge found that such evidence did not give rise to a hostile work environment claim and recommended the court grant NHC's motion for summary judgment on that claim as well. Id.

Dickerson objected to the magistrate judge's recommendations on three bases. ECF No. 50. First, Dickerson argues that there are genuine issues of material fact that exist regarding her knowledge of the open position. Id. at 2–4. She contends that Bartlett's statement that the position was filled, when the position in fact was not filled until a month later, shows that he "intended to preclude [Dickerson] from applying for the position by restricting the job opening to a word-of-mouth notice and informing her the position had been filled." Id. at 4. Second, Dickerson argues that McClellan would routinely berate her in front of her coworkers, so much so that she sought medical

treatment, which does in fact rise to the level necessary to find a hostile work environment. Id. at 4–5. Third, Dickerson argues that issues of credibility should be left to the trier of fact. Id. at 5. She specifically notes that the magistrate judge's citation to the McClain Declaration, ECF No. 38-5 at 4, and her purported reliance on the declaration—which contradicts Dickerson's position—impermissibly favors the moving party over the non-moving party. ECF No. 50 at 5–6.

In reply, NHC emphasizes that Dickerson fails to present specific objections and merely restates her previous arguments. ECF No. 51 at 8. Regarding the racial discrimination and retaliation claims, NHC emphasizes that Dickerson has not rebutted the R&R's conclusion that Dickerson took no steps to apply for the position nor has Dickerson presented any evidence whatsoever that she was more qualified than McClellan for the position. Id. at 6–7. Additionally, even if the court were to infer that Bartlett intentionally lied—a conclusion for which Dickerson has presented absolutely no evidence—there is no evidence before the court that his alleged lie was due to Dickerson's race. Id. at 5. In reference to the hostile work environment claims, NHC contends that Dickerson's objections merely disagree with the magistrate judge's conclusions and simply restate arguments already made in the briefs such that the hostile work environment objections should be reviewed for clear error. Id. at 3–4. Finally, NHC emphasizes that Dickerson's statement regarding issues of credibility misses the mark because the alleged ignored evidence—Bartlett's alleged statement to McClain that he would never hire Dickerson as the Director of Social Services—occurred outside the statute of limitations, meaning the magistrate judge only provided the citation in the

interests of thoroughness but did not in fact rely on any evidence regarding Bartlett's alleged statement when reaching her conclusions. Id. at 8.

Dickerson's objections impact each of the three § 1981 claims and the court examines each claim in turn.

**A. Racial Discrimination**

To prove a discrimination case under § 1981, "a plaintiff must demonstrate (1) that [s]he is a member of a racial minority, (2) that defendants had the intent to discriminate against h[er] on the basis of h[er] race, and (3) that the defendants' discrimination concerned one of the statute's enumerated activities." Pena v. Porter, 316 F. App'x 303, 316 (4th Cir. 2009) (citing Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000)); see also Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018 (4th Cir. 1999) ("A § 1981 action, then, must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)."). Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The Supreme Court has interpreted this statute to "prohibit[] racial discrimination in the making and enforcement of private contracts." Runyon v. McCrary, 427 U.S. 160, 168 (1976). Section 1981(b) defines the phrase "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

A plaintiff can establish a discrimination or retaliation claim under § 1981 in one of two ways. First, the plaintiff can establish the claim through direct or circumstantial

evidence, Holland v. Wash. Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007), or, alternatively, can establish the claim under the McDonnell Douglas burden-shifting framework.  The McDonnell Douglas framework was initially developed for Title VII discrimination cases, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), but since the McDonnell Douglas decision, the framework has been held to apply in discrimination cases arising under § 1981, Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989); Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001), and in retaliation cases under Title VII and § 1981, Beall v. Abbott Lab'ys, 130 F.3d 614, 619 (4th Cir. 1997) (Title VII); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 n.1 (4th Cir. 2000) (§ 1981).  In this case, Dickerson proceeded under the McDonnell Douglas framework.  ECF No. 41 at 6 ("Under the burden-shifting evidentiary framework established in McDonnell Douglas").

There are three steps in the McDonnell Douglas framework: (1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) if the plaintiff presents a prima facie case, then the burden shifts to the defendant to show a legitimate non-discriminatory or non-retaliatory reason for the adverse employment action; and (3) if the defendant shows such a reason, then the burden shifts to the plaintiff to prove that the reason is pretextual.  See McDonnell Douglas Corp., 411 U.S. at 802–04; Sanders v. Tikras Tech. Sols. Corp., 725 F. App'x 228, 229 (4th Cir. 2018).  To establish a prima facie case of a § 1981 discrimination claim, the plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.  Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 190 (4th Cir.

2010). The magistrate judge recommended that the court find that Dickerson has not met her burden of proof for her claim of racial discrimination because she failed to provide evidence that could support either the third or fourth elements of a racial discrimination claim. R&R at 8–10.

First, Dickerson has not established that she meaningfully faced reduced opportunities for employment such that the third element—an adverse employment action—is not met. Id. at 11–12. Certainly, reduced opportunities for promotion may be considered adverse employment actions. See Bennett v. Boeing Co., 2021 WL 5782754, at *3 (D.S.C. Dec. 7, 2021) (listing examples of adverse employment actions to include discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, and reduced opportunities for promotion). But the instant facts do not meaningfully suggest that Dickerson faced reduced opportunities for promotion. R&R at 10. Dickerson admits that she knew of the Director of Social Services vacancy and further indicates that McClain encouraged her to apply for the position. ECF No. 41-1, Dickerson Dep. 30:1–32:7. Broadly construed, Dickerson's objection—that there are genuine issues of material fact that exist regarding her knowledge of whether the position was open—appears to indirectly contest the R&R's conclusion. ECF No. 50 at 2. Dickerson's objection appears to be that the issue was not only whether the job was posted on the bulletin board but also whether Bartlett's purported statement that he had filled the position also reduced her opportunities for promotion. See id. The R&R considered that evidence and noted that Bartlett's statement that the position had been filled in no way prevented Dickerson from applying, which is particularly relevant since the position was not filled until a month later in December 2020. R&R at 11. Stated

succinctly, "[Dickerson's] mistaken belief that the Director of Social Services position was full is insufficient to establish a genuine issue of fact as to whether [NHC] actually precluded her from applying for the job." Id.

Second, even if the court were to find the third element met—which it does not—the fourth element is very clearly missing; there is no evidence that Dickerson was treated any differently from any of the other employees. R&R at 9–10. In other words, the failure to post to the bulletin board affected all employees at that location equally. Id. Even if the court were to construe Dickerson's conversation with Bartlett as individual treatment separate from that which her coworkers experienced and even if the court were to construe Bartlett's alleged statement as an intentional lie for the purpose of preventing Dickerson from applying, there is no evidence before the court that such actions were because of Dickerson's race. See R&R at 11. Thus, the court agrees with the magistrate judge and finds that a reasonable jury could not return a verdict for Dickerson because she has not met the burden of proof to show different treatment from similarly situated employees outside the protected class.[4] As such, the court grants summary judgment in favor of NHC on Dickerson's § 1981 racial discrimination claim.

---

[4] To the extent Dickerson bases her race discrimination claim on NHC's failure to promote her, the magistrate judge also found that the record does not support a prima facie case on this basis either. R&R at 11–13. Namely, Dickerson did not apply for the position in question, and the evidence shows that McClellan was more qualified than Dickerson. Id. In pertinent part, Dickerson was not a licensed social worker, nor did she have management experience, whereas McClellan had both of those qualifications. Id. Thus, McClellan was more qualified than Dickerson for the position. Id. Dickerson's objections do not contest this conclusion and in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond, 416 F.3d at 315. A review of the record for clear error indicates that the R&R accurately summarized this case and the applicable law. Accordingly, the court adopts the magistrate judge's R&R as to a race discrimination claim based on failure to promote and grants summary judgment in favor of NHC on that claim.

### B. Retaliation

A prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements of a prima facie case of retaliation under Title VII. Boyer-Liberto v. Fontainebleu Corp., 786 F.3d 264, 281 (4th Cir. 2015). Namely, when direct evidence is unavailable, a plaintiff must show (1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action. Munday v. Waste Mgmt. of N. Am. Inc., 126 F.3d 239, 242 (4th Cir. 1997).

The R&R concluded that no reasonable jury could find that any of the three elements of a § 1981 retaliation claim were met. First, since the letters to Bartlett and the NHC were outside the statute of limitations, the letters cannot be relied upon as evidence that Dickerson engaged in protected activity. R&R at 13. Without the letters, there is no evidence that Dickerson engaged in a protected activity within the relevant period. Id. As such, no reasonable jury could return a verdict for Dickerson on this claim since that first element is missing. See Anderson, 477 U.S. at 248.

Even if the court were to reach the second and third elements, it would find them lacking. As described above, Dickerson cannot establish the second element that an adverse employment action occurred. There is no evidence that Dickerson applied for the job nor is there any evidence that she was as qualified as McClellan. Id. Dickerson has presented no evidence to dispel NHC's legitimate, nondiscriminatory and nonretaliatory reasons for hiring McClellan over Dickerson. Id. Similarly, the third element is missing; there is no evidence of a causal relationship between the protected activity—which, again, has not been identified in the relevant period—and the adverse action. Id. at 14.

The R&R went on to consider the evidence—which falls outside of the statute of limitations—and concluded that even if the court were able to consider Dickerson's letter and Bartlett's alleged statement that he would never hire Dickerson for the Director position, there is no evidence of a connection between the alleged statement and Dickerson's protected activity.[5] Id. Thus, the court adopts the magistrate judge's recommendation and grants summary judgment in favor of NHC on Dickerson's retaliation claim.

### C. Hostile Work Environment

To establish a § 1981 hostile work environment claim, the plaintiff must show that the offending conduct was: (1) unwelcome; (2) based on race or sex; (3) subjectively and objectively severe or pervasive enough to alter the plaintiff's conditions of employment and create an abusive atmosphere; and (4) imputable to the employer. See Spriggs, 242 F.3d at 183–84. To establish that the conduct was based on race or sex, the plaintiff must show that "but for" her race or sex, she "would not have been the victim of

---

[5] Additionally, the court finds Dickerson's third objection—that the magistrate judge improperly employed a credibility determination—meritless. See ECF No. 50 at 5–6. The R&R clearly states that this court's October 4, 2021 order restricted the scope of Dickerson's remaining § 1981 claims based on the applicable statute of limitations. See ECF No. 17 (referencing ECF No. 12). As this court specified in that order, it is well-settled that a four-year statute of limitations applies to § 1981 claims. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004). Dickerson filed her claim on July 19, 2021. Thus, any events which occurred prior to July 19, 2017, are outside the statute of limitations and cannot be considered to support these claims. As such, Dickerson's February 2017 letters to Bartlett and to NHC and her February 2017 meeting with Bartlett cannot form a basis for her claim. Thus, the magistrate judge did not rely on McClain's declaration in reaching her conclusion nor did she impermissibly view the evidence in NHC's favor. See R&R at 13–15. Rather, the retaliation claim failed at the first prong when Dickerson failed to specify any protected activity that took place after July 19, 2017. The R&R's review of the additional prongs of the retaliation claim and the evidence of Dickerson's actions prior to July 19, 2017, was done in the interests of completeness, not as a basis for the magistrate judge's recommendation.

the alleged discrimination." Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134, 142 (4th Cir. 2007). The plaintiff must show more than simple teasing, offhand remarks, and isolated incidents (unless "extremely serious"). Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

The magistrate judge found Dickerson's contention that she was subjected to a hostile work environment unsubstantiated. R&R at 15–17. To the extent that Dickerson based her claim that it was hostile because she was denied the promotion to Director of Social Services, that contention is meritless for the reasons discussed above. To reiterate in brief, McClellan was more qualified for the position, Dickerson never applied, and there is no evidence that the alleged conduct which purportedly impaired Dickerson's promotion to that position was motivated by her race. The magistrate also considered whether a hostile work environment claim could reasonably arise from Dickerson's allegations that McClellan would berate her in front of other employees. R&R at 16–17. Even construed liberally, the magistrate judge concluded that Dickerson's allegations were not objectively severe to reach the level required to bring a hostile work environment claim.[6] Id.; see also EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (noting that complaints premised on nothing more than "rude treatment by co-

---

[6] In pertinent part, the magistrate judge highlighted that when Dickerson was asked to specify how McClellan singled her out, Dickerson testified that McClellan would sometimes laugh and talk with other employees, but not Dickerson. R&R at 16 (citing ECF No. 38-2, Dickerson Dep. at 43:1–57:10). As one example, Dickerson said she "asked [McClellan] a simple question, and [she] literally went off on me, yelled at me in the room with other social workers." ECF No. 38-2, Dickerson Dep. at 43:1–4. When asked whether McClellan treated her differently from other workers, Dickerson said that "[McClellan] is not the most approachable." Id. at 46:10–47:3. When asked for specific examples of how McClellan treated Dickerson differently, Dickerson specified that she was "not always able to have a . . . conversation with her, without her being not the most pleasant . . . as if I'm disturbing her." Id. at 51:19–25.

workers, callous behavior by supervisors, or a routine difference of opinion and personality conflict with one's supervisors" do not establish a hostile work environment). Additionally, the magistrate judge found that Dickerson confirmed McClellan had never made any race related comments or jokes, which tends to show there is no genuine dispute over whether the offending conduct was based on race.[7]  Id.  Thus, the R&R recommended the court grant summary judgment on Dickerson's hostile work environment claim.

In her objection, Dickerson disagrees with the magistrate judge's conclusion that McClellan's alleged berating was not severe enough to constitute a hostile work environment. ECF No. 50 at 5. She emphasizes that it was severe enough to prompt Dickerson to seek medical treatment. Id.  In reply, NHC emphasizes that Dickson's objection to the R&R's recommendation as to the hostile work environment claim merely disagrees with the R&R's conclusion and simply restates the arguments that she raised in her brief. ECF No. 51 at 3–4. NHC also emphasizes that Dickerson's objection fails to address the missing race aspect of the claim and overlooks the specific points made by the magistrate judge. Id.

NHC is correct, Dickerson raises no new arguments in her objections and merely restates arguments made in her response brief. See ECF No. 41 at 10 (explaining that

---

[7] The magistrate judge relied on the Dickerson deposition in reaching this conclusion. R&R at 16–17 (citing ECF No. 38-2, Dickerson Dep.)  When asked to specify how McClellan discriminated against Dickerson on account of her race, Dickerson stated that she "[couldn't] formulate her thoughts at [that] moment." ECF No. 38-2, Dickerson Dep. at 49:23–50:11.  When asked again later, Dickerson simply stated that McClellan treats her "differently" without providing further detail. Id. at 50:19–25.  Dickerson then confirmed that McClellan never made any race-related comments or jokes to her. Id. at 51:1–18.

Dickerson's testimony shows that McClellan's treatment of her was sufficiently severe and pervasive for a hostile work environment claim). "[A] mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review" and the court need only review the Report & Recommendation for "clear error." Lee v. Saul, 2019 WL 3557876, at *1 (E.D. Va. Aug. 5, 2019) (citations omitted); see also Veney v. Astrue, 539 F. Supp. 2d 841, 846 (W.D. Va. 2008) ("Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection makes the initial reference to the magistrate useless.") (alterations adopted); Demarest v. Horry Cnty. Police Dep't, 2020 WL 4506273, at *1 (D.S.C. Aug. 5, 2020) ("[M]erely reiterating the same arguments presented to a magistrate judge does not constitute a specific objection warranting de novo review."). A review of the record for clear error indicates that the R&R accurately summarized this case and the applicable law. Accordingly, the court adopts the magistrate judge's R&R as to Dickerson's hostile work environment claims and grants summary judgment in favor of NHC on that claim.[8]

---

[8] However, even if the court were to engage in de novo review, Dickerson's objections do not meaningfully address the omission of any evidence whatsoever that might support Dickerson's allegation that McClellan's hostile actions were motivated by racial animus. Counsel for NHC asked Dickerson at her deposition whether McClellan treated other African Americans in her department in the way that she treated Dickerson, to which Dickerson responded "I don't know. I'm speaking on behalf of just . . . me." ECF No. 38-2, Dickerson Dep. at 51:1–11. Dickerson also noted that she was not aware of McClellan making any race-related jokes or comments. Id. at 51:16–18. Even if Dickerson had met her burden of proving the remaining elements of the claim—which the court is skeptical of—no reasonable jury could find that Dickerson has met her burden of proof for the second element of a hostile work environment claim simply because there is no evidence whatsoever that McClellan's allegedly hostile treatment of Dickerson was because of Dickerson's race.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the report and recommendation and **GRANTS** the motion for summary judgment.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**September 18, 2023**

**Charleston, South Carolina**

19